*J. H. Felker,* for plaintiff. *R. L. Cox, O. Roberts,* contra.

---

11292. HINES, director-general, *v.* RUBNITZ.

STEPHENS, J. 1. The allegations in a petition are sufficient to charge the defendant with having wantonly injured the plaintiff after his perilous position as trespasser upon the defendant's tracks had become known to the servants of the defendant operating and controlling the movements of an approaching train, where the petition alleges, that the plaintiff, in approaching the defendant's railroad-tracks at a public crossing, detoured and attempted to cross the defendant's tracks at a place near the crossing in the switchyards of the defendant, that the plaintiff's presence there was known to the defendant's watchman stationed at the crossing, whose duty it was to signal the defendant's trains and thereby control their movements and to cause them to stop when necessary, that the watchman signalled to the plaintiff to cross in front of some box-cars of a shifting train which had come to a stop, thus assuring him that he could cross the tracks in safety, that the plaintiff in thus attempting to cross was suddenly put in a perilous situation by a sudden starting of the train and was knocked down and run over and injured, and that such perilous situation of the plaintiff was known to the watchman.

2. Although an allegation in the petition that the watchman, when he directed the plaintiff to cross the tracks of the defendant, knew or in the exercise of ordinary care should have known that the plaintiff's safety would be endangered is subject to special demurrer as being duplicitous, such defect is immaterial, since the petition elsewhere unequivo-

cally charges that the watchman knew of the plaintiff's presence in the switch-yard and of his perilous situation when attempting to cross the tracks, and clearly seeks to recover alone upon the theory that the plaintiff's presence in the switch-yard and his dangerous and perilous position were known to those operating and controlling the train, and does not seek to recover upon the ground that his presence or perilous position could have been known by the exercise of due care upon the part of those operating and controlling the train.

3. Although a failure to observe statutory requirements as to duties required of those in charge of a train when approaching a crossing is not negligence per se as to one not at the crossing, a failure to perform any of the acts required by the statute may, independently of the statute, under the circumstances of the particular case, amount to negligence. Where a trespasser on the tracks of a railroad company is in a perilous situation a short distance beyond a crossing and such perilous situation has become known to those operating the train, a failure on the part of the railroad company to ring a bell or to give warning to the trespasser or to perform any act which happens to be required by the statute, may nevertheless at the time and place be negligence as a matter of fact as respects the trespasser.

4. In a suit for damages alleged to have been caused by the negligence of a particular railroad company, brought against Walker D. Hines, Director-General of Railroads of the United States Government, the petition, which alleges that he is operating and controlling a certain named railroad company, sufficiently alleges negligence against the defendant when it alleges negligence on the part of the railroad company.

5. The petition was not subject to any of the other special grounds of demurrer interposed.

6. The motion to dismiss the plaintiff's case because of no process against the defendant, not being based upon fact, was properly dismissed.

*Judgment affirmed. Jenkins, P. J., and Hill, J., concur.*

DECIDED MARCH 3, 1921.

Action for damages; from Chatham superior court — Judge Meldrim. January 1, 1920.

From the petition it appears that when crossing a railroad-track in a switchyard, as directed by a watchman, the plaintiff was struck and injured by cars which had been stationary, and which, while he was on the track, were struck and set in motion by an engine. The injury occurred about 125 feet north of where the track was crossed by Bay-street extension, a public street which runs east and west and which is crossed by a number of other tracks running north and diverging in different directions in the switchyard. " At the point where petitioner was struck there are eight tracks." The petition, after describing the situation of the tracks, alleges:

5. On the afternoon of February 22, 1918, about 4:30 o'clock,

petitioner approached the said crossing of the defendant company. The watchman, whose name petitioner does not know and cannot ascertain, but whose name is well known to the defendant company, was present and saw petitioner walk northward beside the eastern track just north of Bay street. After he had walked on the eastern side of the tracks, from 100 to 125 feet north of the Bay street crossing an engine of the defendant company approached from the south and pushed two cars upon the third track from the west, which it left standing, with the northern end thereof about 100 or 125 feet north of Bay street crossing.

6. Petitioner remained standing on the eastern side of the track aforesaid. Immediately after the engine had left the cars thus standing, it moved back towards the south and crossed the Bay street crossing. The watchman in charge of the crossing, whose duties were to protect persons using the crossing, was then standing upon the crossing in full view of petitioner.

7. Petitioner had waited until the engine had moved the cars across the crossing and the same had become stationary, and the engine had moved back towards the south. He was exercising the utmost care and diligence for his protection.

8. While petitioner was thus standing upon the eastern side of the track aforesaid, and out of danger, the watchman who was then standing upon the crossing motioned to the petitioner with his flag towards the left, saying to petitioner, " Go on across."

9. Petitioner does not know what authority the watchman had to direct him to cross the tracks at any point other than the crossing, or whether he had any authority. The watchman did in fact exercise such authority, and had done so for nine years. The watchman's express authority cannot be ascertained by petitioner, but is well known to the defendant. Petitioner charges that the watchman had full knowledge of his desire to cross the tracks and of his presence upon the tracks. Petitioner started to cross the tracks and was upon the tracks at his express direction and with his full knowledge.— This paragraph was amended by adding: Plaintiff thought and believed that the watchman had authority to direct him to cross said tracks, it appearing to plaintiff that he was exercising such authority, and it appearing that he had such authority.

10. After receiving the signal aforesaid, petitioner started

across the tracks, in plain view of the watchman, and with his full knowledge and consent, and after petitioner had gotten to the track upon which the stationary cars were standing, and was upon the same, then being within 5 or ten feet of the northern end of the cars, the engine of the defendant company moved northward across the Bay street crossing, struck the stationary cars suddenly and with great violence, knocking them upon petitioner and knocking petitioner to the ground. The cars were struck with such violence by the locomotive of the defendant that both trucks of one car ran over petitioner. The wheels of the car ran over petitioner's right leg just below the knee, so crushing and mangling it that it had to be amputated.

11. The defendant company, through its watchman, knew that petitioner was crossing the tracks. He had reason to know that petitioner was near the end of the standing cars aforesaid, that he was in a place of danger, and that the movement of the cars northward would strike petitioner to his injury and damage.

12. A part of the duty of said watchman is to signal persons across the railroad crossing when the crossing is clear of trains or cars. Other duties performed by the said watchman are to signal trains across the street crossing, and to stop the same before crossing the street crossing; and the said watchman knew that, if he permitted the locomotive to move northward upon the track where the stationary cars were standing, and where petitioner was crossing, such movement would in all probability inflict injury upon petitioner.

13. The agents and servants of the defendant company in charge of the engine at the time and place, whose names are unknown to petitioner and cannot be ascertained by him, but are well known to the defendant, approached the said crossing without ringing any bell, sounding any warning, or giving any other notice to any person who might be upon the crossing, or who might be in danger, with the knowledge of the defendant or its watchman; and petitioner charges that, if such notice had been given of its purpose to cross said crossing, petitioner would have been enabled to avoid injury.

14. The defendant company, through its crossing watchman, did a careless and negligent thing in directing petitioner across the tracks of the defendant company at a place other than a crossing,

and knew that he was directing petitioner into a place of grave danger, and knew that after having done so he should exercise commensurate care to avoid injury to petitioner.

15. The defendant company had no person stationed upon the north end of the stationary cars, either to warn persons who might be upon the track of danger, or to signal to the engineer of the presence of such persons, so that he might stop the engine.

16. The watchman in charge of the crossing, whose duties required that he should signal the crews in charge of the locomotive and trains to cross the street, although knowing that petitioner was crossing the tracks of the defendant company, nevertheless permitted the engine to cross the Bay street crossing, with result that the said locomotive struck the cars, to petitioner's injury and damage.

17. The said crossing watchman, whose duties required that he should stop engines and trains from crossing the street if occasion required, although he knew petitioner was crossing the tracks aforesaid, negligently failed to stop the said train, but permitted the same to move across the street, to petitioner's injury and damage.

18. The defendant company would have avoided injury to petitioner if its crossing watchman had not motioned petitioner and directed him to cross the tracks at the time and place, and would also have avoided injury to petitioner if he had warned petitioner of the approach of the engine towards the stationary cars, and if the engineer had rung a bell or sounded a warning as the engine approached the Bay street crossing, and if the crossing watchman had not permitted the engineer in charge of the engine to cross the street and strike the cars. If the defendant company had sounded any warning whatever of the approach of the said engine to the said crossing, or if the crossing watchman had given petitioner any warning whatever of its approach, petitioner would not have been injured.

19. Petitioner's injuries are due entirely to the fault and negligence of the defendant company for the following reasons, to wit: (1) Because the crossing watchman directed petitioner to cross the tracks of the defendant company at a time when the watchman knew, or in the exercise of ordinary care should have known, that petitioner's safety would be endangered. (2) Because the crossing watchman knew petitioner's danger in crossing the tracks of the

defendant company where he had been directed by the watchman aforesaid, and directed the engineer in charge of the locomotive to cross the street and permitted him to strike the cars aforesaid. (3) Because the crossing watchman, knowing of petitioner's danger in crossing the tracks, failed to stop the locomotive before it had crossed the street and before it struck the cars aforesaid. (4) Because the watchman, knowing of petitioner's presence upon the tracks, failed to give any warning whatever of his approaching danger, which warning the watchman could easily have given. (5) The defendant company was negligent because its employees in charge of the locomotive permitted its engine to approach a public street crossing without sounding a bell, blowing a whistle or sounding any warning to apprise persons upon the crossing, or petitioner in a place of danger, known to the defendant, of the approach of the said engine and of the danger to petitioner. (6) In suddenly and without warning striking the cars and injuring petitioner. (7) In failing to have upon the northern end of said cars an employee who could have warned petitioner or notified the engineer of his dangerous position in time to stop the engine and avoid injury to petitioner. (8) The defendant was guilty of negligence per se in crossing the street without sounding a bell, or other warning, as prescribed by law.

20. Petitioner was in the exercise of all ordinary and reasonable care and diligence, and did not consent or contribute to his injuries. The nature and extent of the damages are set out.

The defendant demurred on the following grounds: No cause of action is set forth. It is not alleged or shown for what purpose or in what capacity the plaintiff was crossing the railroad tracks at the place where he was injured. To the 7th paragraph, which alleges that the petitioner was exercising the utmost care and diligence for his protection, the defendant demurred on the ground that it states a mere conclusion of the pleader. To the 9th paragraph, because it appears from the petition that the proximate cause of the plaintiff's injury was his going across the yard-tracks, not at a public or private crossing, and while the movement of cars was in progress, it being alleged that he did so in obedience to the direction of a crossing watchman of the defendant at the Bay-street extension crossing, but it not being alleged that the watchman had authority so to direct him, or that in giving the direction

the watchman was acting in the scope of his authority. To the allegation in the 9th paragraph that "the watchman did in fact exercise such authority and had done so for nine years," because it is not alleged when, where, how, under what circumstances, or for what purpose the watchman had previously directed the plaintiff to cross the tracks at any other point than the public crossing. To the allegation in the 9th paragraph that "the watchman had full knowledge of his desire to cross the tracks," because it is not alleged for what purpose the plaintiff desired to cross the tracks at a place other than a public crossing, or when or how the watchman acquired such knowledge of his desire to cross them. To paragraphs 10, 11, 12, 14, 16, 17, and 19, because: (*a*) it is not shown that the watchman knew, when he directed the plaintiff to cross the tracks, that the plaintiff would cross so near to the standing cars as to be struck when the engine moved upon them; (*b*) it is not shown that the watchman knew that the engine would strike the stationary cars with such violence as to cause the standing cars to be knocked over and upon the plaintiff. To the 11th paragraph, because it is not shown why the watchman had reason to know that the plaintiff was near the end of the standing cars and in a place of danger. To paragraphs 13, 15, and 18, and to subdivisions 5, 6, 7, and 8 of the 19th paragraph, because it is not alleged that the engineer in charge of the movement of the engine had knowledge of the plaintiff's presence on the track in a position of danger, or any reason to anticipate that he would be injured by the switching of the cars. To subdivision 5 of paragraph 19, because it is not alleged how the defendant knew that the plaintiff was in a place of danger, or through what agent, officer, or employee the defendant had such knowledge. To paragraphs 13, 15, 16, 17 and 18, and to subdivisions 6, 7, and 8 of paragraph 19, because no actionable negligence as to the plaintiff is alleged therein. To subdivision 1 of paragraph 19, because it is ambiguous and uncertain, in that it charges both actual and implied notice of the danger of the plaintiff, and the defendant is not advised upon which theory the plaintiff relies.

*H. W. Johnson,* for plaintiff in error.

*O'Neal & Kravitch, Oliver & Oliver,* contra.